THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL SHEA CARLOS, Defendant-Appellant.

Fourth District   No. 4—93—0861

Opinion filed September 21, 1995.

Daniel D. Yuhas and Janieen R. Tarrance, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

After a McLean County jury trial, defendant Michael Shea Carlos was convicted on eight counts of first degree murder, a violation of section 9—1 of the Criminal Code of 1961 (720 ILCS 5/9—1 (West 1992)). The trial court sentenced him to natural life imprisonment. Defendant now appeals, asserting he is entitled to a new trial because the trial court erred by allowing into evidence a videotape showing prior inconsistent statements by a defense witness. We affirm.

Defendant was charged with the shooting deaths of Terry Williams and Jerome McDonald, which occurred outside the Third Ward Club (Club) in Bloomington, Illinois, late in the evening of December

19, 1992. At trial, during the State's case in chief, the State called Marion Carr to the stand. He was a cousin of both defendant and the victim McDonald. Carr testified he drove to the Club that evening, sat in a car in the parking lot, and drank. He heard gunshots, but did not see from where the shots came. He also did not see anyone with a gun and did not see anyone shoot anyone else.

The State then attempted to impeach Carr's testimony. Carr admitted a videotape was made without his knowledge of a conversation he had the day after the shooting with Spanky Ledbetter in the basement of a house. When the prosecuting attorney began to question Carr about his statements on the tape, he replied:

"I didn't know [the conversation] was getting taped. Now, everything I said, I wasn't under oath when I said it so, I was told you on my statement that was the truth was on that videotape I was putting everything together what I heard from everyone else."

In answers to most of the questions by the prosecuting attorney regarding his statements in the videotape, he replied he could not remember what he had said in the videotape.

The State requested to show the videotape to the jury to impeach Carr's testimony. Defense counsel objected, arguing the tape was inadmissible as a prior inconsistent statement because Carr already admitted he made the statements on the tape. The trial court overruled the objection, declaring the videotaped statements were admissible under section 115—10.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115—10.1 (West 1992)).

The videotape shows Carr talking with Ledbetter in the basement of a house. Carr describes the shooting in detail. Carr explains McDonald was in an argument with a girl named Jackie. Apparently, defendant decided to forcefully intervene. Carr tried to dissuade defendant from using a gun by telling him a gun was not necessary. He also told defendant not to shoot their cousin. However, defendant said he had some business to take care of and shot McDonald. Defendant then turned and shot Williams. Throughout his narration, Carr consistently used the first person singular. At no point did he say the events he was describing were told to him by someone else. At one point, he even disputes a description of the event given to Ledbetter by another eyewitness, telling Ledbetter his version was correct because he was there and he saw the shooting happen.

■ Section 115—10.1 of the Code states:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

\*\*\*

(2) narrates, describes, or explains an event or condition of which the witness had personal knowledge, and

\* \* \*

(C) the statement is proved to have been accurately recorded by a tape recorder, videotape recording, or any other similar electronic means of sound recording." 725 ILCS 5/115—10.1 (West 1992).

■ Defendant asserts Carr's videotaped statements are inadmissible because his narration of the shooting was not based on personal knowledge. Defendant directs us to several places in Carr's trial testimony where he explained he was telling the truth at trial and his videotaped narration was formed only by piecing together other witnesses' descriptions of the incident. Contrary to defendant's argument, this court has previously declared the admissibility of prior statement turns on whether it appears on its face to be from firsthand knowledge and *not* from the later testimony of the recanting witness. Otherwise, a turncoat witness could always prevent the admission of a prior inconsistent statement merely by claiming at trial the prior statement was based only on hearsay, and not on firsthand knowledge. *People v. Fauber* (1994), 266 Ill. App. 3d 381, 391, 640 N.E.2d 689, 695.

■ Here, Carr's videotaped narration of the shooting was presented as a firsthand account and gave no indication it was otherwise. Thus, his videotaped statements regarding the shooting satisfied the firsthand knowledge requirement in section 115—10.1 of the Code. Further, defendant does not challenge the fact Carr's videotaped statements were accurately recorded and were inconsistent with his trial testimony. Finally, defendant does not challenge the fact Carr was subject to cross-examination concerning his videotaped statements. As such, Carr's videotaped statements satisfied the admissibility requirements of section 115—10.1 of the Code.

Defendant, however, directs us to the following language in *Fauber*: "[A] substantive policy reason for section 115—10.1 of the Code was to prevent a turncoat witness from backing away from a former statement made under circumstances indicating it was likely to be true by merely denying the statement." (*Fauber*, 266 Ill. App. 3d at 390-91, 640 N.E.2d at 695.) From this language, defendant concludes an additional requirement for admission under section 115—10.1 of this Code is the statement was made under circum-

stances indicating it is reliable and trustworthy. Defendant misunderstands this language in *Fauber*. This court was merely noting the legislature, in section 115—10.1, expressly enumerated the circumstances it concluded would indicate a prior statement was reliable. As Professors Cleary and Graham explain, subsection (c)(1) admits statements made under oath because such statements tend to be reliable and because the witness cannot deny making them. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 801.9, at 660-61 (6th ed. 1994).) Further, "Subsection (c)(2) extends admissibility to prior inconsistent statements felt to possess sufficient assurance of certainty of making and accuracy of reporting." (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 801.9, at 662 (6th ed. 1994).) Thus, the fact a statement is admissible under section 115—10.1 of the Code *already* demonstrates its reliability, so no *additional* evidence of the statement's reliability need be shown. Therefore, because Carr's videotaped statements satisfied the requirements of section 115—10.1 of the Code, the trial court did not err in admitting them. Because the trial court did not err, we need not reach defendant's argument the alleged error here was prejudicial.

The decision of the circuit court of McLean County is affirmed.

Affirmed.

GREEN and STEIGMANN, JJ., concur.