THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CRAIG YONKER, Defendant-Appellant.

First District (4th Division)   No. 1—92—2146

Opinion filed December 30, 1993.—Rehearing denied February 14, 1994.

Walsh, Neville, Pappas & Mahoney, of Chicago (Ronald F. Neville and Matthew P. Walsh, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Lou Anne Corey, and Jason H. Payne, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HOFFMAN delivered the opinion of the court:

The defendant, Craig Yonker, appeals from a jury verdict finding him guilty of first degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(1)). We consider: (1) whether the prosecutor made comments during closing arguments that were improper and denied the defendant a fair trial; and (2) whether the second degree murder statute violates the due process clause of the Illinois Constitution. For the following reasons, we reverse and remand for a new trial.

The defendant was charged with first degree murder after he shot and killed the victim, Jeffrey Krueger, on March 4, 1991. A jury trial was held on the charge. Based on our decision, it is only necessary to briefly set forth the testimony presented.

Ronald Comparin, an Alsip police officer, was one of several officers who responded to a call of a domestic disturbance in the defendant's apartment in the evening of March 4. Comparin testified that the defendant was calm. When asked whether the fight was still going on, the defendant said it was not over yet. Krueger's body was lying face up on the floor of the apartment with blood on the neck and head, and a wooden ax handle near his right hand. The apartment was orderly and nothing was overturned. After observing a gun in the room, the defendant was arrested and read his *Miranda* rights.

While in the apartment, the defendant gave a statement to Comparin. He said that he had been drinking with Krueger in the apartment for a while but when he wanted to leave, Krueger would not let him. Krueger picked up the ax handle, which the defendant kept near the front door, and swung it twice at the defendant but missed. The defendant retrieved a gun from his bedroom and returned to the front of the apartment. Krueger swung the handle at the defendant a third time but did not strike him. The defendant shot Krueger, who then fell down, and the defendant shot him a second time.

The defendant also gave a statement at the police station a few hours later. Officer Thomas Peterson testified that the defendant told him he was drinking in his apartment with Krueger, Don Che Bat, and the defendant's girl friend, Chris Verdin. When Krueger and Che Bat would not leave the apartment after the defendant asked them to do so, the defendant left the living room to telephone a neighbor for help. When he returned, he realized that Verdin and Che Bat had left. Krueger would not allow the defendant to leave the apartment. Krueger picked up the ax handle and swung it at the defendant at least once. The defendant called 911 and told the operator that there was a domestic problem. He picked up a gun that he kept

in the living room. Krueger was standing about four feet away with the ax handle over his head, and the defendant fired one shot away from Krueger's head. Krueger did not fall and the defendant fired again. The police arrived a few minutes later.

Officer Peterson interviewed the defendant again later that day. The defendant said he was standing with his back to the front door and he could have left the apartment through that door. The defendant also stated that Krueger fell after the first shot and when he struggled to get up, the defendant shot him a second time.

A medical examiner testified that Krueger died from gunshot wounds to the face and neck and that the shots were fired from about 6 to 18 inches away. The State rested.

The defendant testified that after he realized Che Bat and Verdin left together, he wanted to leave the apartment but Krueger would not let him. When Krueger learned that the defendant called 911, Krueger held the ax handle over his head and told the defendant he would "kick [his] ass." The defendant picked up a gun that he kept in the dining area of the apartment. Krueger threatened him again and swung the ax handle at him. The defendant showed Krueger the gun and told him to put the handle down. Krueger laughed, told the defendant he would kill him, and came at him with the handle; Krueger was three to four feet away at the time. The defendant pulled the trigger and Krueger fell. The defendant accidentally nudged Krueger, and Krueger opened his eyes and jerked. The defendant pulled the trigger again in fright. The defendant also testified, however, that the first time he shot Krueger, Krueger was lying on the floor. The defendant testified that he feared for his life.

The jury returned a verdict of guilty of first degree murder. After the defendant's motion for a new trial was denied, he was sentenced to 28 years in prison and he now appeals.

OPINION

The defendant contends that prosecutorial misconduct during closing arguments denied him a fair trial and cites to several instances in the record. He claims error in the following comments made by the prosecutor in closing:

> "There is only one question that needs to be answered in order to arrive at a fair verdict and that one question is do you believe the defendant? That's how simple this case is. So should you believe the defendant? That's the question that needs to be answered.
>
> * * *
>
> So the question becomes do you believe him? The only way that

you can return a verdict of anything other than guilty of first degree murder is if you believe him. That's the only way. If you don't believe that story then he's guilty of first degree murder." The defendant's counsel failed to object to either comment although it was raised in the post-trial motion.

To preserve an issue for appellate review, it is necessary to raise an objection at trial and in a post-trial motion; the failure to preserve an issue results in a waiver of that issue on appeal. (*People v. Pasch* (1992), 152 Ill. 2d 133, 168, 604 N.E.2d 294; *People v. Herrett* (1990), 137 Ill. 2d 195, 561 N.E.2d 1.) An issue that has been waived may be considered as plain error when the evidence at trial was closely balanced or when the error was so fundamental and of such magnitude that the defendant was denied a fair trial. (See *People v. Leger* (1992), 149 Ill. 2d 355, 391, 597 N.E.2d 586.) In this case, because the issue was not preserved for review, we will consider whether the alleged improper comment amounts to plain error.

■ Prosecutors are granted wide latitude in making their closing arguments (*Pasch*, 152 Ill. 2d at 184), but they have an ethical obligation to refrain from presenting improper and prejudicial closing arguments (*People v. Dunsworth* (1992), 233 Ill. App. 3d 258, 599 N.E.2d 29). Their responsibility is not limited to the State; they represent all of the people, including defendants, and it is their duty to see that defendants receive a fair trial. *People v. McLain* (1992), 226 Ill. App. 3d 892, 589 N.E.2d 1116.

A verdict must not be disturbed unless the improper remarks resulted in substantial prejudice to the defendant, such that absent those remarks the verdict would have been different. (*Pasch*, 152 Ill. 2d at 185.) It is reversible error for the prosecution to attempt to shift the burden of proof to the defense through improper comments. (*Leger*, 149 Ill. 2d at 399.) Improper comment is plain error when it is either so inflammatory that the defendant could not have received a fair trial or so flagrant as to threaten a deterioration of the judicial process. *People v. Phillips* (1989), 127 Ill. 2d 499, 538 N.E.2d 500.

In *People v. Wilson* (1990), 199 Ill. App. 3d 792, 557 N.E.2d 571, which the defendant relies on, the court held that improper comments that shift the burden of proof are substantially prejudicial and justify reversal even if the issue was not properly preserved in the trial court. There were two instances of improper comment in *Wilson*. One occurred when the prosecutor invoked the authority of his office to attack the credibility of a defense witness, and the other occurred when the prosecutor attempted to shift the burden of proof by stating the defendant would have the jury believe that every

witness for the State was lying. However, the decision to reverse was not based on the fact that the comments in combination constituted substantial prejudice. Rather, the court held that both comments independently were substantially prejudicial. The court stated:

"The proscription against misstatements of law includes statements that in effect distort the burden of proof by suggesting incorrectly what the jury must find to reach a certain verdict. The correct standard for consideration of the evidence in a criminal trial is not whether one side is more believable, but whether, taking all of the evidence into consideration, guilt as to every essential element of the charge has been proven beyond a reasonable doubt. [Citation.]

Here, *** the prosecutor's statement [conveyed the message that the defendant] carried a burden of proof to establish his innocence, and to meet his burden of proof, [the defendant] was required to show that the State's witnesses had lied. Clearly, [the defendant] was not required to present any such proof, and the jury was not required to make any such finding. The prosecutor's statement created doubt as to whether the jury applied the proper standard of proof in considering the evidence. It was, therefore, substantially prejudicial.

We note that the statements here were not as egregious as those that have previously justified reversal, but the issue is not one of degree. To invoke the integrity or authority of the State to endorse or discredit a witness, or misstate the burden of proof or standard of review, to any extent, compromises the fairness of the judicial process and shall not be tolerated." *Wilson*, 199 Ill. App. 3d at 797, 557 N.E.2d at 574-75.

The State contends that the comments in the present case were proper, claiming that similar comments were found to be proper in *People v. Pecoraro* (1991), 144 Ill. 2d 1, 578 N.E.2d 942. The prosecutor told the jury in *Pecoraro* that if it found the defendant was not guilty, it was finding that the State's witnesses were unbelievable. The court held that because the defendant's version of the events differed considerably from the State's, the comments were not prejudicial.

The supreme court has stated that if a defendant presents evidence, the prosecution can question its credibility, but it is impermissible for the prosecution to attempt to shift the burden of proof to the defendant. (*Phillips*, 127 Ill. 2d 499, 538 N.E.2d 500.) The court explained:

"[T]his court has long held that it is impermissible for the prosecution to attempt to shift the burden of proof to the defense. [Citation.] Indeed, the defense is under no obligation to present any evidence; 'the prosecution has the burden of proving beyond a

reasonable doubt all the material and essential facts constituting the crime.' [Citation.] This court has never said or implied, however, that once a defendant does present certain evidence it is beyond the reach of appropriate comment by the prosecution. There is a great deal of difference between an allegation by the prosecution that defendant did not prove himself innocent and statements questioning the relevance or credibility of a defendant's case. [Citations.] Not every prosecutorial statement questioning relevance or credibility rises to an impermissible shifting of the burden." *Phillips*, 127 Ill. 2d at 527, 538 N.E.2d at 511.

■ In this case, the prosecutor told the jury that it need only consider the defendant's testimony to determine whether he was guilty of first degree murder and that if it did not believe the defendant's testimony, it should find him guilty of first degree murder. This was a flagrant misstatement of the law because it shifted the burden of proof to the defendant to establish that he was not guilty of the offense. The State was required to prove each and every element of the crime charged and, whether or not the jury believed the defendant, if it did not believe the State met its burden, it was required to find the defendant not guilty. Unlike the comments in *Phillips* and *Pecoraro*, the comments here went beyond questioning the credibility or the relevance of the defendant's evidence and directly misstated the burden of proof. The comments were even more egregious than those in *Wilson*, where the prosecutor merely suggested an improper standard of review, because here the comments directly shifted the burden. The comments here may have been relatively brief, but as stated in *Wilson*, to shift the burden to the defendant to prove his innocence, to any extent, compromises the fairness of the judicial process and will not be tolerated. The comments were clearly improper; the error was fundamental and denied the defendant a fair trial. This error requires reversal of the defendant's conviction and a remand for a new trial.

As a result of our decision, it is not necessary to discuss most of the remaining arguments which the defendant raises for review. But we find it necessary to discuss one other point that may be raised again on remand.

■ The defendant asserts that the second degree murder statute (Ill. Rev. Stat. 1989, ch. 38, par. 9—2) violates the due process clause of the Illinois Constitution because it improperly shifts the burden of proof to the defendant. He acknowledges that numerous decisions of the appellate court have rejected the argument that the statute violates the due process clause of the United States Constitution but contends that those decisions did not consider whether the statute

violates the Illinois Constitution. However, in *People v. Davis* (1991), 221 Ill. App. 3d 1023, 583 N.E.2d 64, the appellate court specifically considered and rejected that contention. We agree with the reasoning in *Davis* and, as a result, the defendant's argument on this point is without merit.

For the foregoing reasons, the defendant's conviction is reversed and remanded for a new trial.

Reversed and remanded.

CAHILL, P.J., and JOHNSON, J., concur.